UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

STATE OF MISSISSIPPI          :
                              :
                              : ss. <u>AFFIDAVIT</u>
                              :
COUNTY OF LAUDERDALE          :

I, William Brett Lacey, being duly sworn, depose and state:

1.  I am a Special Agent with the Department of Homeland Security, Bureau of Immigration and Customs Enforcement (ICE), assigned to the Resident Agent in Charge in Jackson, Mississippi. I have been so employed since October 21, 2001. As part of my daily duties as an ICE agent, I investigate criminal violations relating to child exploitation and child pornography, in violation of 18 U.S.C. §§ 2252 (a) and 2252A. I have received training in the area of child pornography and child exploitation, and have had the opportunity to observe and review numerous examples of child pornography (as defined in 18 U.S.C. § 2256)[1] in all forms of media including computer media.

---

[1] "Child Pornography means any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where- (A) the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct:...[or] (C) such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct." For conduct occurring after April 20, 2003, the definition also includes "(B) such visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from that of a minor engaging in sexually explicit conduct." 18 U.S.C. § 2256(8).

2. This Affidavit is made in support of an application for a warrant to search 1624 34th Avenue, Meridian, Mississippi 39301 (the SUBJECT PREMISES). The SUBJECT PREMISES can be more particularly described as a single story residence with a covered porch on the front of the residence. A mailbox is in front of the residence with the numbers 1624 prominently displayed. The residence has a green roof with tan siding and a brick bottom.

3. The purpose of this application is to seize evidence of violations of 18 U.S.C. §§2252(a)(4)(B), 2252A(a)(5)(B), and 2251(b) which make it a crime to possess child pornography and produce child pornography, and violations of 18 U.S.C. §§2252(a)(2) and 2252A(a)(2), which make it a crime to receive child pornography in interstate commerce by computer and §§ 2252(a)(1) and 2252A(a)(1), which make it a crime to transport or ship child pornography in interstate commerce.

4. I am familiar with the information contained in the Affidavit based upon the investigation I have conducted and based on my conversations with other law enforcement officers who have engaged in numerous investigations involving child pornography.

5. Because this Affidavit is being submitted for the purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only those facts that I believe are necessary to establish probable cause to believe that evidence of violations of 18 U.S.C. §§ 2252, 2252A, and 2251(b) are located in the SUBJECT ELECTRONIC STORAGE MEDIA. Where statements of others are set forth in this Affidavit, they are set forth in substance and in part.

6. As a result of the instant investigation described more fully below, there is probable cause to believe that evidence, fruits, and instrumentality's of violations of federal law, including 18 U.S.C. §§ 2252 and 2252A, are present at the SUBJECT PREMISES.

7. The instant investigation has revealed that Randy JACK of ████████, Meridian, Mississippi 39301 is in possession of child pornography that he produced and transmitted to other individuals via the Internet and that there is probable cause to believe that child pornography is being maintained at the SUBJECT PREMISES. Paragraphs 8 and 9 explain how computers and computer technology have impacted and affected the way in which child pornography is produced, utilized and distributed. The information set forth in paragraphs 10 through 12 provides background concerning an underlying investigation through which the lead to the SUBJECT PREMISES was developed.

**Computers and Child Pornography**

8. Based upon my knowledge, training, and experience in child exploitation and child pornography investigations, and the experience and training of other law enforcement officers with whom I have had discussions, computers and computer technology have had a significant impact on the way in which child pornography is produced, distributed and utilized. Prior to the advent of computers and the Internet, child pornography was produced using cameras and film, resulting in either still photographs or movies. The photographs required darkroom facilities and a significant amount of skill in order to develop and reproduce the images. As a result, there were definable costs involved with the production of pornographic images. To distribute these

3

images on any scale also required significant resources. The photographs themselves were somewhat bulky and required secure storage to prevent their exposure to the public. The distribution of these wares was accomplished through a combination of personal contacts, mailings, telephone calls, and compensation for these wares would follow the same paths. More recently, through the use of computers and the Internet, distributors of child pornography use membership-based/subscription-based web sites to conduct business, allowing them to remain relatively anonymous.

9. In addition, based upon my own knowledge, training, and experience in child exploitation and child pornography investigations, and the experience and training of other law enforcement officers with whom I have had discussions, the development of computers has also revolutionized the way in which child pornography collectors interact with, and sexually exploit children. Computers serve four basic functions in connection with child pornography: production, communication, distribution, and storage. More specifically, the development of computers has changed the methods used by child pornography collectors in these ways:

> A. Producers of child pornography can now produce both still and moving images directly from a common video or digital camera. The camera is attached, using a device such as a cable, or digital images are often uploaded from the camera's memory card, directly to the computer. Images can then be stored, manipulated, transferred, or printed directly from the computer. Images can be edited in ways similar to how a photograph may be altered. Images can be lightened, darkened, cropped, or otherwise manipulated. The producers of child pornography can also use a device known as a scanner to transfer photographs into a computer readable format. As a result of this technology, it is relatively inexpensive and technically easy to produce, store, and distribute child pornography. In addition, there is added benefit to the pornographer in that this method of production does not leave as large a trail for law enforcement to follow.
>
> B. The Internet allows any computer to connect to another computer. By connecting to a host computer, electronic contact can be made to

literally millions of computers around the world. A host computer is one that is attached to a network and serves many users. Host computers are sometimes operated by commercial Internet Service Providers (ISPs), such as America Online ("AOL") and Microsoft, which allow subscribers to dial a local number and connect to a network, which is, in turn, connected to the host systems. Host computers, including ISPs, allow e-mail service between subscribers and sometimes between their own subscribers and those of other networks. In addition, these service providers act as a gateway for their subscribers to the Internet of the World Wide Web.

C. The Internet allows users, while still maintaining anonymity, to easily locate (i) other individuals with similar interests in child pornography; and (ii) web sites that offer images of child pornography. Child pornography collectors can use standard Internet connections, such as those provided by businesses, universities, and government agencies, to communicate with each other and to distribute child pornography. These communication links allow contacts around the world as easily as calling next door. Additionally, these communications can be quick, relatively secure, and as anonymous as desired. All of these advantages, which promote anonymity for both the distributor and recipient, are well known and are the foundation of transactions between child pornography collectors over the Internet. Sometimes the only way to identify both parties and verify the transportation of child pornography over the Internet is to examine the recipient's computer, including the Internet history and cache[2] to look for "footprints" of the web sites and images accessed by the recipient.

D. The computer's capability to store images in digital form makes it an ideal repository for child pornography. A single floppy disk can store

---

2    "Cache" refers to text, image and graphic files sent to a file temporarily stored by a user's computer from a web site accessed by the user in order to allow the user speedier access to an interaction with that web site.

dozens of images and hundreds of pages of text. The size of the electronic storage media (commonly referred to as a hard drive) used in home computers has grown tremendously within the last several years. Hard drives with the capacity of 40 gigabytes are not uncommon. A hard drive with such a capacity can store thousands of images at a very high resolution. Magnetic storage located in host computers adds another dimension to the equation. It is possible to use a video camera to capture an image, process that image in a computer with a video capture board, and save that image to storage in another country. Once this is done, there is no readily apparent evidence at the "scene of the crime". Only with

careful laboratory examination of electronic storage devices is it possible to recreate the evidence trail.

## Overview of the Underlying Investigation

10. The information set forth below is provided as a broad overview of the investigation to date. It does not include a listing of all investigative techniques employed or even the full and complete results of any of the listed investigative efforts.

11. On August 5, 2015, the Homeland Security Investigations (HSI) Assistant Special Agent in Charge (ASAC) San Angelo, Texas received information from the Abilene Texas Police Department in reference to a tip from a cooperating defendant that they received child pornography from KIK user "live4medie4u", aka Fighter101 Jack, via the KIK application. HSI Special Agent Marisol O'Leary met with the Abilene Police Department and reviewed the information received. The Abilene Police Department received written consent from Misty KELLEY, a registered sex offender, on July 27, 2015, to review the contents of her HTC smartphone and Samsung Galaxy cellular telephone. A review of the cellular phones indicate that KELLEY was communicating under user name "bi_love91", with KIK user "live4medie4u" via the KIK application. The KIK conversations are sexual in nature and detail abuse of "live4medie4u's" daughter. Within the conversations, images containing the sexual abuse of the prepubescent child are discussed and images of the abuse are produced and transmitted by the user "live4medie4u" and received by KIK user "bi_love91". On July 5, 2015, LRA wel KIK user "live4medie4u" had a conversation with KIK user "bi_love91" that discussed the exploitation of "live4medie4u's" ████████ "live4medie4u" a black male, sends pictures of himself with his erect penis on and near a partially nude prepubescent female. The last image transmitted during this discussion shows the same nude

6

prepubescent female and her vagina with her legs spread apart and with a clear liquid resembling semen dripping down the abdomen and vagina. During subsequent conversations, "live4medie4u" continues to discuss the sexual exploitation of ▓▓ ▓▓▓▓▓▓▓▓▓▓ and transmits several more images of the exploitation. Several of these images show a prepubescent female being vaginally penetrated by an adult black male with his fingers and tongue. The image of the penetration with the tongue shows the face of "live4medie4u". "live4medie4u" states during the conversations that this ▓▓ ▓▓▓▓▓▓▓▓▓▓. "live4medie4u" also states that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.

12. On August 5, 2015, law enforcement queries on "live4medie4u" yielded a positive result on a free dating website, Plenty of Fish. An image of a black male resembling the KIK user is shown holding a young female child and claims he resides in Meridian, Mississippi. On August 6, 2015, HSI San Angelo served a summons on KIK for subscriber information for "live4medie4u".. The response from KIK yielded that the user lists his first name as Fighter101, last name Jack, email address of jackjack222222@yahoo.com and the username "live4medie4u". On August 6, 2015, HSI San Angelo identified a Facebook account with the user profile Randy Jack from Meridian, and a profile picture of KIK user "live4medie4u" and an infant child. One of the images located on the profile match the KIK user profile image.

**Probable Cause to Search the Subject Premises**

13. On August 7, 2015, HSI Jackson SA William Lacey was contacted by HSI San Angelo regarding "live4medie4u", aka Randy JACK. SA Lacey received a copy of JACK's Mississippi driver's license and sent the picture of JACK to SA O'Leary in San

7

Angelo, Texas. SA O'Leary confirmed the photo of JACK as matching "live4medie4u" from the photo that shows "live4medie4u" licking the prepubescent females vagina. SA Lacey confirmed with Meridian Police Assistant Chief James Sharp that JACK currently resides at the SUBJECT PREMISES. Assistant Chief Sharp confirmed as recent as 2014 that JACK used the SUBJECT PREMIES address during a misdemeanor arrest and that JACK also used this address to pawn a gun. Assistant Chief Sharp also confirmed and antique Mercedes Benz was parked at the residence and that it was registered to JACK.

14. Based upon my knowledge, experience, and the training and experience of other law enforcement officers involved in child exploitation and child pornography investigations with whom I have had discussions, there are certain characteristics common to individuals involved in the receipt and collection of child pornography:

   A. Child pornography collectors may receive sexual gratification, stimulation, and satisfaction from contact with children; or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or other media; or from literature describing such activity.

   B. Collectors of child pornography may collect sexually explicit or suggestive materials, in a variety of media, including photographs, magazines, motion pictures, videotapes, books, slides and/or drawings or other visual media. Child pornography collectors oftentimes use these materials for their own sexual arousal and gratification. Further, they may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.

   C. Collectors of child pornography almost always possess and maintain their "hard copies" of child pornographic material, that is, their pictures, films, videotapes, magazines, negatives, photographs, correspondence, mailing lists, books, tape recordings, etc., in the privacy and security of their home or some other secure location. Child pornography collectors typically retain pictures, films, photographs, negatives, magazines, correspondence, books,

tape recordings, mailing lists, child erotica, and videotapes for many years.

D. Likewise, collectors of child pornography often maintain their collections that are in a digital or electronic format in a safe, secure and private environment, such as a computer and surrounding area. These collections are often maintained for several years and are kept close by, usually at the collector's residence, to enable the collector to view the collection, which is valued highly.

E. Child pornography collectors also may correspond with and/or meet others to share information and materials; rarely destroy correspondence from other child pornography distributors/collectors; conceal such correspondence as they do their sexually explicit materials; and often maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in contact and who share the same interests in child pornography.

F. Collectors of child pornography prefer not to be without their child pornography for any prolonged time period. This behavior has been documented by law enforcement officers involved in the investigation of child pornography throughout the world.

15. The undersigned Affiant submits that there is probable cause to believe that Randy JACK using an Internet connection at ███████ Meridian, Mississippi 39301 ~~39096~~ is a collector of child pornography. This opinion is based upon the conversations of JACK with the cooperating defendant and the child pornographic images transmitted via the Internet.

16. Finally, based upon the conduct of individuals involved in the collection of child pornography set forth in paragraph 14, namely, that they tend to maintain their collections at a secure, private location for long periods of time, there is probable cause to believe that evidence of the offenses of receiving and possessing child pornography are currently located at the SUBJECT PREMISES.

### Specifics Regarding the Seizure and Searching of Computer Systems

17. Based on my own experience and consultation with other agents who have been involved in the search of computers and retrieval of data from computer systems and related peripherals, and computer media, there are several reasons why a complete search and seizure of information from computers often requires seizure of all electronic storage devices, as well as all related peripherals, to permit a thorough search later by qualified computer experts in a laboratory or other controlled environment:

    A. Computer storage devices, such as hard disks, diskettes, tapes, laser disks, and Bernoulli drives, can store the equivalent of hundreds of thousands of pages of information. Additionally, when an individual seeks to conceal information that may constitute criminal evidence, that individual may store the information in random order with deceptive file names. As a result, it may be necessary for law enforcement authorities performing a search to examine all the stored data to determine which particular files are evidence or instrumentalities of criminal activity. This review and sorting process can take weeks or months, depending on the volume of data stored, and would be impossible to attempt during a search on site; and

    B. Searching computer systems for criminal evidence is a highly technical process, requiring expert skill and a properly controlled environment. The vast array of computer hardware and software available requires even those who are computer experts to specialize in some systems and applications. It is difficult to know before a search what type of hardware and software are present and therefore which experts will be required to analyze the subject system and its data. In any event, data search protocols are exacting scientific procedures designed to protect the integrity of the evidence and to recover even hidden, erased, compressed, password-protected, or encrypted files. Since computer evidence is extremely vulnerable to inadvertent or intentional modification or destruction (both from external sources or from destructive code embedded in the system as a booby trap), a controlled environment is essential to its complete and accurate analysis.

18. Based on my own experience and my consultation with other agents who have been involved in computer searches, searching computerized information for evidence or instrumentalities of a crime often requires the seizures of all of a computer

system's input and output peripheral devices, relate software, documentation, and data security devices (including passwords) so that a qualified computer expert can accurately retrieve the system's data in a laboratory or other controlled environment. There are several reasons that compel this conclusion:

    A.    The peripheral devices that allow users to enter or retrieve data from the storage devices vary widely in their compatibility with other hardware and software. Many system storage devices require particular input/output devices in order to read the data on the system. It is important that the analyst be able to properly re-configure the system as it now operates in order to accurately retrieve the evidence listed above. In addition, the analyst needs the relevant system software (operating systems, interfaces, and hardware devices) and any applications software which may have been used to create the data (whether stored on hard drives or on external media), as well as all related instruction manuals or other documentation and data security devices; and

    B.    In order to fully retrieve data from a computer system, the analyst also needs all magnetic storage devices, as well as the central processing unit (CPU). In cases like the instant one where the evidence consists partly of image files, the monitor and printer are also essential to show the nature and quality of the graphic images which the system could produce. Further, the analyst again needs all the system software (operating systems or interfaces, and hardware drivers) and any applications software which may have been used to create the data (whether stored on hard drives or on external media) for proper data retrieval.

    C.    I am familiar with and understand the implications of the Privacy Protection Act ("PPA"), 42 U.S.C. § 2000aa, and the role of this statute in protecting the First Amendment activities. I am not aware that any of the materials to be searched and seized from the SUBJECT PREMISES are protected materials pursuant to the PPA. If any such protected materials are inadvertently seized, all efforts will be made to return these materials to their authors as quickly as possible.

## Conclusion

19.    Based on the above information, there is probable cause to believe that 18 U.S.C. §§ 2252, 2252A, and 2251(b) which, among other things, make it a federal crime

for any person to knowingly possess and/or receive child pornography, and produce child pornography have been violated, and that the following property, evidence, fruits, and instrumentalities of these offenses are located at the SUBJECT PREMISES located at

    A.    images of child pornography and files containing images of child pornography in any form wherever it may be stored or found including, but not limited to:

        1.    any computer, computer system and related peripherals; tapes, cassettes, cartridges, streaming tape, commercial software and hardware, computer disks, disk drives, monitors, computer printers, modems, tape drives, disk application programs, data disks, system disk operating systems, magnetic media floppy disks, hardware and software operating manuals, tape systems and hard drive and other computer related operation equipment, digital cameras, scanners, computer photographs, Graphic Interchange formats and/or photographs, undeveloped photographic film, slides, and other visual depictions of such Graphic Interchange formats (including, but not limited to, JPG, GIF, TIF, AVI, and MPEG), and any electronic data storage devices including, but not limited to hardware, software, diskettes, backup tapes, CD-ROMS, DVD, Flash memory devices, and other storage mediums; any input/output peripheral devices, including but not limited to passwords, data security devices and related documentation, and any hardware/software manuals related to or used to visually depict child pornography or child erotica; contain information pertaining to the interest in child pornography; and/or distribute, receive, or possess child pornography, or information pertaining to an interest in child pornography and child erotica;

        2.    books and magazines containing visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. §2256;

        3.    originals, copies, and negatives of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. §2256; and

- 4. motion pictures, films, videos, and other recordings of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. §2256;

B. information or correspondence pertaining to the possession, receipt or distribution of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. §2256, that were transmitted or received using computer, some other facility or means of interstate or foreign commerce, common carrier, or the U.S. mail including, but not limited to:

- 1. envelopes, letters, and other correspondence including, but not limited to, electronic mail, chat logs, and electronic messages, establishing possession, access to, or transmission through interstate or foreign commerce, including by United States mail or by computer, of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. §2256; and

- 2. books ledgers, and records bearing on the production, reproduction, receipt, shipment, orders, requests, trades, purchases, or transactions of any kind involving the transmission through interstate commerce including by United States mail or by computer of any visual depiction of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. §2256;

C. credit card information including but not limited to bills and payment records;

D. records evidencing occupancy or ownership of the premises described above, including, but not limited to, utility and telephone bills, mail envelopes, or addressed correspondence; and

E. records or other items which evidence ownership or use of computer equipment found in the above residence, including, but not limited to, sales receipts, bills for Internet access, and handwritten notes.

This Affiant requests authority to seize such material.

20. Based upon the foregoing, this Affiant respectfully requests that this Court issue a search warrant for the SUBJECT PREMISES, ███████████

Meridian, Mississippi 39301, more particularly described in Attachment A, authorizing the seizure of the items described in Attachment B.

21. It is further respectfully requested that this Court issue an Order sealing, until further order of this Court, all papers submitted in support of the Application, including the Application, Affidavit, and Search Warrant, and the requisite inventory notice (with the exception of one copy of the warrant and the inventory notice that will be left with Randy JACK). Sealing is necessary because the items and information to be seized are relevant to an ongoing investigation, and premature disclosure of the contents of this Affidavit and related documents may have a negative impact on this continuing investigation and may jeopardize its effectiveness.

_____
William Brett Lacey, Special Agent HIS

Subscribed and sworn before me this 7th of August 2015

_____
Honorable Linda R. Anderson
United States Magistrate Judge



GOVERNMENT
EXHIBIT
"A"

# ATTACHMENT B
# ITEMS TO BE SEARCHED FOR AND SEIZED

Images of child pornography and files containing images of child pornography in any form wherever it may be stored or found including, but not limited to:

1. any computer, computer system and related peripherals; tapes, cassettes, cartridges, streaming tape, commercial software and hardware, computer disks, disk drives, monitors, computer printers, modems, tape drives, disk application programs, data disks, system disk operating systems, magnetic media floppy disk, hardware and software operating manuals, tape systems and hard drive and other computer related operation equipment, digital cameras, scanners, computer photographs, Graphic Interchange formats and/or photographs, undeveloped photographic film, slides, and other visual depictions of such Graphic Interchange formats (including, but not limited to, JPG, GIF, AVI, and MPEG), and any electronic data storage devices including, but not limited to hardware, software, diskettes, backup tapes, CD-ROMS, DVD, Flash memory devices, and other storage mediums; any input/output peripheral devices, including but not limited to passwords, data security devices, and related documentation, and any hardware/software manuals related to or used to: visually depict child pornography; contain information pertaining to the interest in child pornography; and/or distribute, receive, or possess child pornography, or information pertaining to an interest in child pornography, or information pertaining to an interest in child pornography;

- A. books and magazines containing visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256;
- B. originals, copies, and negatives of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256; and
- C. motion pictures, films, videos, and other recordings of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256.

2. information or correspondence pertaining to the possession, receipt or distribution of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256, that were transmitted or received using computer, some other facility or means of interstate of foreign commerce, common carrier, or the U.S. mail including, but not limited to:

- A. envelopes, letters, and other correspondence including, but not limited to, electronic mail, chat logs, and electronic messages, establishing possession, access to, or transmission through interstate or foreign commerce, including by U.S. mail or by computer, of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256;
- B. books, ledgers, and records bearing on the production, receipt, shipment, orders, requests, trades, purchases, or transactions of any kind involving the transmission through interstate or foreign commerce including by U.S. mail or by computer of any visual depiction of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256;

C. credit card information including but not limited to bills and payment records;

D. records evidencing occupancy or ownership of the premises described above, including but not limited to utility, and telephone bills, mail envelopes, or addressed correspondence; and

E. records or other items which evidence ownership or use of computer equipment found in the above residence, including, but not limited to, sales receipts, bills for Internet access, and handwritten notes.